The United States Court of Appeals for the Federal Circuit is now open and in session. God Save the United States and an Honorable Court. Thank you. Be seated. Good morning, everyone. The first case this morning is number 2008-1221, Mr. Skvorecz. Is that the correct pronunciation? That's correct. Okay. Mr. Lieberstein, please proceed. Thank you. Good morning, Your Honor. This invention is a very simple device called the wire chafing stand. Please come to the podium so that the microphone will pick up your voice. This invention is represented by a very simple device called a wire chafing stand, which supports a chaffer on which food is placed. It's used for warming the food. The wire chafing stand itself is nothing more but a wire rod configured in a closed configuration with wire legs which support the wire rod above the ground. The wire legs represent by each wire leg consists of two upright members and a base member. The base member may sit on the ground, doesn't have to sit on the ground. Claim one, which defines the device, is divided into two parts. The first part defines actually the construction of the wire chafing stand consisting of the wire legs, which has the upright sections, and the base is connected to the upright section by a given angle. The second part of the claim comprises a plurality of offsets, which is the essential component of the present invention. The offsets are not necessary, are not integral parts of the wire chafing stand. However, if you're going to transport the wire chafing stand for a manufacturer or a distributor, whether it's essential or transported over long distances, you must be able to transport it inexpensively, which necessitates nesting one stand into another. Actually, many, many stands into one another. In your view, Mr. Lieberstein, did the original claims cover generically or dominate the presence or absence of the offset? When it was originally filed, there were claims which didn't go on. There were originally issued claims. As issued, they were all related to the invention of the offsets. As issued, yes. The offsets are defined in the application as an indent. The indent, the offset is formed by the indent. It's a crimp in the wire, which causes the wire to displace itself and separates the wire into the two segments. That separation, that displacement is, by definition, as defined in the application, an offset. You have to have an offset to accommodate nesting. The offset, the priority of offsets are located in the upright sections of the wire. Do you claim that an offset has to go outward rather than inward? An offset can go inward or outward. It doesn't matter which direction the offset is going. The application never mentions the orientation of the offset. All you need to have is a displacement. You've got to displace the axis of the... But the purpose of the offset is to permit stacking, isn't it? Absolutely. Can it stack if the offsets all go in? Yes. Or if they go out? Yes. Either way, it'll perform that function. One will perform better than the other. No question. But they will both perform stacking. Okay. As indicated earlier, the claim is divided in two parts. The first part merely defines the wire chafing stand. The second part defines the plurality of offsets. The plurality of offsets must be located in the upright sections of the wire legs. The claim does not state in the bottom half that the plurality of offsets are located in at least two legs. It says they're located in said upright sections of said wire legs, which refers back to the first half, defining the at least two wire legs. To read a claim, you've got to read the claim as a whole, which means that regardless of how many legs you have in the device, the plurality of offsets must be consistent with that. So if you've got four legs, you've got to have offsets located in the upright sections of the four wire legs. That's consistent with the specification, which defines the offset as laterally displacing each leg relative to the point of attachment of the leg with the rim. And in fact, the specification preferably states that each upright section is referred to as a side. Each side of each wire leg, the upright section of each wire leg, should include at least one offset. The Pryor Act, which was cited against this and considered to anticipate this claim, does not teach offsets in each wire leg. It teaches offsets only if you want to consider that. It teaches this called the buff pattern application, which is an integral assembly. The bottom portion of the integral assembly is a pan which has longitudinal wires and upstanding wires. If you consider them together as representing wire legs, the longitudinal wires extend upwardly, and then they have a shoulder which connects the upstanding wire to a circular portion, which really permits you to hold the device. What you're saying is the error that the board committed. The board ignored... What did the board do that was wrong? The board ignored in the reference cited against the claim, the board ignored the transverse wire leg in the device as if it didn't exist. Or they said they're not going to consider it to be a wire leg. They didn't say what it was, but they weren't going to consider it to be a wire leg. Yet reference teaches that transverse element to be as essential as the longitudinal element for supporting the structure, the pan. There's no distinction made in the reference between the transverse wire and the longitudinal wire. They are both considered essential to the construction of the device for supporting it. Am I correct in my assumption that the novelty of this device is its ability to stack them when you transport them? That's absolutely correct. The novelty of this device is the existence of offsets, which enables you to stack them one inside another, and enables you to support each by having the offset. The offset itself, by definition, creates the displacement for laterally displacing either the wire leg relative to the rim or the rim relative to the wire leg. Now, the board left the impression whether it was because they viewed this as a broadening reissue or it looks as if they started afresh as far as examination is concerned. But they left the impression that the claims were just too broad, whether or not one looked at the amendments that were proposed for reissue. Is there no opportunity in this procedure for resolving some of the issues that they hint can be resolved by narrowing the claims? I'm not sure what the only narrowing would be to define the claims as including each wire leg as including an offset, specifically reciting in the claim that each wire leg includes an offset. But actually, the way the claim is drafted, there's no other way for this to make any sense. But would that resolve the problem? I mean, I did think their instruction in each was curious, but nonetheless, there it is. It would resolve the issue of anticipation, except that the board considered the sighted reference as having longitudinal wires and ignored the existence of a transverse wire. And if they considered the longitudinal wires to be the only wires in the anticipated prior art, then the longitudinal wires, and if they considered the shoulder to represent the offset, they would exist offsets in the only two wires that existed in that structure. All right, well, we're into your rebuttal time. Let's hear from the office. Okay. I'll ask them the same question. Excuse me. Sure. Sorry. You don't need to give him the microphone. May it please the board, Your Honor. William LaMarca for USPTO. One of the points made by Pellant is that the board ignored crossmember 48 in the buff reference. Buff reference is the key piece of prior art cited here for the basis of anticipation. And if you look at the buff reference, what we're referring to when he talks about crossmember 48, if you go to page A406 of the joint appendix, you'll see crossmember 48. And the board didn't ignore it. What the board said was crossmember 48 was actually on top of longitudinal numbers 49. And when you look at the buff reference, the board made a finding, and that finding was that buff had at least two wire legs forming a base support, which members 49 show along longitudinal numbers which this lower rack or support stand could rest upon. So 48 wasn't ignored by the board. It was just deemed not to be a wire leg within the definition as used by the appellant in their specification. And the reason was the board said crossmember 48 was actually on top of longitudinal numbers 49, not down on the base. So that was what the reason was. But nevertheless, even if number 48, crossmember 48 was deemed a wire leg, the board took it a step further and said the claim is broad enough that it doesn't require offsets be in all wire legs. The claim requires that offsets be in the at least two wire legs, which we've got here. Well, but it says at least two, and then it goes on to say with each wire leg having two. Yes, Your Honor. Now, with each wire leg, doesn't that cover all of the wire legs rather than just two? Well, interestingly enough, you mentioned the word all. The word all was not put in the claim, Your Honor, and it probably could have been. If it would have said all wire legs. It says each. It says each. You're saying each is not each. It's less than each. What could that be? That's very strange. Are you defending that? What the board is saying, Your Honor, is that there are at least two wire legs, and each of those two wire legs have offsets. That's not what it says, is it? It said with each of those two wire legs. What it says with each wire leg. Yes, Your Honor. Doesn't that suggest that covering all wire legs, whether there be two or three or four. And the board said even if the claim were open to that reading, they're not saying it's not open to that reading, but they're also saying that their reading is reasonable. And their reading is this claim uses the word comprising twice throughout the claim. Comprising presumes open language. Here, when you recite elements, I want to have at least two wire legs. That seems to me, is that really the issue? The opening, the use of the word comprising and open-ended would mean that it's okay to have more than two wire legs. But that doesn't seem to me to answer the question, what is meant with each? Whether each means two or whether each means every one of them. And that question, that is not crystal clear from the reading of the claim. And the board is saying even though the claim is open to that reading that you've made, possibly it means all of the wire legs or it means each of the two wire legs. Mr. LaMarca, if we don't buy this curious linguistic interpretation, does Mr. Lieberstein's client win? No, Your Honor, because the claim is also rejected under 112 first paragraph. So even if the court doesn't accept the board's construction of the claim. This is a reissue, not a reexamination. That's correct, Your Honor. It's a reissue, not a reexamination. So where does 112.6 come in? No, 112 first paragraph. I'm sorry, did I misspeak? I apologize. Well, I may have. Lack of written description support. There's a 112 first paragraph rejection of the same exact claim, claim one. And it goes back to the other issue that appellant's counsel was speaking to on the indents being in the upper rim. And if you look at the initial claim that was filed, at the initial filing, and you look at the drawings as filed, those indents did not displace the wire legs. Those indents were simply keeping the wire legs in perfect alignment with the upper rim and there is no displacement. And I can show you those drawings. And as a result, the board found that this language in the claim that says, alternatively you can put the offsets in the upper rims for laterally displacing the wire legs, the board said that's not supported by the initial disclosure. So that claim also fails under 112 first paragraph. So there's really two hurdles that the appellant would have to come over. First, they'd have to overcome the anticipation rejection, which addresses this first issue we discussed about whether the term each refers to just two wire legs or all the wire legs that happen to be there. Whether it refers to each or something else when they said each. Each of the two that are there. Where does it say? Each of only two. It says at least two wire legs and there are at least two. And those wire legs have offsets. Each. Each of them. Each of the at least two have offsets. Yes, Your Honor, they do. Each of these two, yes. But the question is whether it includes each of three. And I understand the confusion, Your Honor. I understand that the court could say, well, do we read it this way or do we read it this way? And the board even acknowledged that in their decision. They said, although they can see that the claim is open to that reading, they also believe that it's open to this reading. And, you know, it would have been very simple to put the word all in the claim to make sure all of the claim, the claim specifically referred to all the wire legs. But let's get past that because even if the court doesn't agree with us on that point, as I pointed out, there still is this 112 first paragraph rejection. And the claim would still fail under 112 first paragraph. So that doesn't really get them to an allowable claim. Now, claim six has been allowed. If the reissue application continues to be rejected, if we affirm for whatever reason, then the applicant is restored the original patent? In this case, right now claim six has been allowed. And if you affirm the rejection, the patent would reissue with claim six. That's what would happen. Only claim six? Well, claim six is currently the allowed claim in the reissue application. What happens if they would have turned down all claims in the reissue? Would the original application remain in force or would it be finished? No, they would be rejected claims at that point. Pardon? They would be rejected claims. How could it be rejected? There was a reissue that was examined. Would they offer to surrender on grant of the reissue? So the reissue is rejected for whatever reason. Let's say as this, a broadening reissue. Then doesn't the applicant retain the original patent? Doesn't have to surrender it, does he? I'm not crystal clear on that, Your Honor, but my understanding is that if the claims, even if he were able to retain it, nevertheless, if he went to assert that patent in a court, in a district court, if it were out there, the evidence from this proceeding would be out there, which would be introduced showing that those claims would be invalid. So either way, it doesn't matter whether. You say showing that the patent was invalid, showing that the board had held the patent invalid, which doesn't necessarily mean the district court is going to hold it. I understand, Your Honor, and I don't know the answer to your question because you're right. It says upon reissue, would the patent be surrendered? That's when it gets surrendered. But here in this case, it wouldn't happen that way. Do you think the board could provide us with a very short statement of what that law is? Absolutely, absolutely, we could provide that. But here, my question, my point to you, Your Honor, that's not going to be an issue in this case. You know what troubles me about this whole business? As I understood what you said is that if we affirm the board, the patent will reissue but only with claim six. That's correct. And that means he's lost all claims other than six. Whereas if it were to turn it all down, we don't know, maybe the prior original patent would still be in effect. That doesn't make much sense. First of all, without giving you a definite answer because I don't have it in front of me, I agree with you. That makes no sense that it would work that way. Maybe all that happens here if we affirm this is there will be a reissue limited to six plus the old, I don't know. No, I don't think so. I think if here, if claim six is allowed and the patent reissues with claim six, at that point, the original patent is surrendered and that patent is gone. And then all you've got is a reissued patent with claim six in it. That's what's going to happen in this case. What about claim five? Claim five has a second paragraph rejection, which is indefiniteness. And basically the board looked at that claim and there was a term in there at the separation. The board said that claim depends on claim one, claim five. The board looked at claim one and found no antecedent basis for the phrase at the separation. And because of that lack of antecedent basis, the board said, therefore, this claim is indefinite and fails under 112 second paragraph. So if we disagree about antecedent basis, otherwise you'd have to take every word in the dictionary and find some sort of antecedent basis in the claim when it might be clearly stated in the specification. In this case, the board found further confusion beyond the fact that it lacked antecedent basis, that when you weld these upward wired legs to the rim and it forms a separation, that's different than welding them at the separation. If you look at the board decision, the board specifically pointed out that at the separation wasn't clearly defined if it was supposed to preexist before this welding or connection operation. That was the confusion the board had over claim five. But claim five depends upon claim one. And if claim one is rejected and claim five depends upon it, I'm not so sure that the 112 second paragraph rejection becomes an issue. I mean, if you affirm the rejection of claim one. If you affirm rejection of a broad claim, it doesn't automatically reject the narrower claim. I understand, Your Honor. I understand that you could rewrite that claim in independent form and then have that dependent claim in independent form with all the limitations. Well, that's purely ministerial, isn't it? I think so. But that would require, I guess, at this point, further prosecution of the matter, which they would take care of after this court was done with it. That's correct. But I think the key issue in the case really is here that we're really debating today, really is claim one. And claim one is rejected for two reasons. Number one, anticipation, which is based upon two things. A factual finding by the board that the crossmember 48 is not a wire leg. And if you disagree with that factual finding, and even in light of the fact that the board's entitled to deference on that factual finding, if you disagree that the evidence of the record doesn't support that, the next question is, did the board construe the claim reasonably? Although it's broader than the construction that the appellant applies, if it's reasonable, it's still a good claim construction, Your Honor, because as broad as reasonable construction applies. Third question, even if you don't agree with that, you don't agree with the first thing, you don't agree with the second thing, and even if you don't agree with that, you then have to not agree with the 112 first paragraph rejection that says claim one has a feature in it that was not supported by the initial disclosure. So there's really three hurdles that the appellant would have to leap over before claim one would be allowable, Your Honor. Well, I'm trying to understand what these hurdles are. So there's a lack of antecedent basis. That's very easily remedied if there's a lack of antecedent basis. You put in an antecedent basis. Now, wouldn't one think that during the course of prosecution of this reissue, the applicant would have been told that someone, the reissue examiner or somebody, sees a technical flaw, you've got to put in an antecedent basis? Is that in the prosecution? If you had the opportunity, on the board, in this case, what happened was the examiner examined the case and reissued. The case then went to the board, and the board made new grounds of rejection, and one of the new grounds of rejection made by the board was this 112. So when there's a new ground, doesn't that give the applicant a chance to respond to it? Absolutely, Your Honor. And he had two things that he could do at that point. He could have reopened prosecution before the examiner and made an amendment, and he chose not to. He chose to simply just argue it before the board on rehearing. But he had the opportunity, once that 112-second paragraph rejection was made, to go back before the examiner and tweak the claim and make, like you said, make small amendments to fix it, and he chose not to. You're absolutely correct. He had the freedom to do that if he wanted to, Your Honor. I got the impression everybody was talking past everyone else, including that what to me is very strange to say that each means that it doesn't have to be each after all. I think the board's view back on that claim construction point is the board viewed the claim as are there at least two wire legs with offsets, and yes, there are. Now, if you've got a piece of prior art that has additional wire legs, that is not prohibited by the claim with the language that it has. That's the board's construction, Your Honor. Now, the board also said the construction applied by the appellant, the claim would be open to that construction as well, but nevertheless, the board's looking at the claim with slightly more breadth, and the board believes. It has to be construed in light of the specification. Absolutely, Your Honor. Not in light of the prior art. Absolutely. The specification shows that each wire leg is an offset. Well, not really, Your Honor. If you look at the specification, there are multiple embodiments, and not all the embodiments have offsets. In fact, figure seven, which is a second embodiment of the metric. I agree. That's true. It has no offsets. It's the claims that says each one. Exactly. And those other embodiments are stackable just as well. They can be stacked. I agree they are in claim. The claim says each. And I think the board did look at the specification when they made that read that claim in light of the specification. They did that, but they also realized that they're mandated, they're obligated to read it broadest reasonable construction. When you have a claim that claims less than everything in the specification, then the claims are read in light of what they say, don't they? Not if there's other information in the specification, which might, after all, invoke prior art. In this case, Your Honor, claim one covers the first embodiment, and then if you look at claim four, which is a dependent claim, it covers that second embodiment in figure seven. Figure seven has no offsets, and the specification says it may have offsets if you want to add them. You can add them. It also talks about figure seven, the alternative embodiment, as only having two wire legs rather than four. The first embodiment has four wire legs, one on each corner. The second embodiment, figure seven, has two wire legs on the ends. Claim one, with claim four, with the exact same language, because claim four depends upon claim one, which incorporates all that language, covers figure seven. So figure seven, which is an alternative embodiment, is covered by these claims. And this language that we're debating over, the each offsets, that's covered in both those. So I don't necessarily agree that the board found every single disclosure in the specification shows offsets. I think what the board was looking for is more precision in this claim to dictate that if you're going to have more than these two wire legs, then when you add those extra legs, you're going to have to have offsets in all of those. And that would have been easily solved by simply putting in a few words, each, or instead of saying each, you could have said, wherein all the wire legs have offsets. And it doesn't say that. It says each. Right. And it's not unreasonable to read each as each what? Each of the at least two wire legs, which is what's required by the claim. That's the way the board read it. And I understand the court may disagree with that. But as I pointed out, there are multiple other reasons why this claim is not patentable, Your Honor. Okay. At least means the same could also have been written as two or more, couldn't it? In fact, in the very first claim that was first filed, it was written as plurality of wire legs. That's how it was originally written. If you look at the claim as originally filed, which is on page 8 of the appendix and page 8 of the board decision, you'll see a reprint of the claim as initially filed. And you'll see when it was initially filed, they didn't even use the word at least two wire legs. They just said a plurality of wire legs. And then they altered that via amendment through prosecution. But either way, does the prior art have at least two wire legs? Absolutely. And do the wire legs that the prior art have have offsets? Yes, they do. Is there potentially an additional wire leg in addition to that? The board says no, the cross member is not a wire leg. But even if you disagree with that finding, simply because you add an additional wire leg, the board's view is the claim doesn't require that extra wire leg necessarily to have an offset, Your Honor. Okay. Any more questions for Mr. Lamarck? Any questions for Mr. Lamarck? Thank you, Your Honor. Okay, thank you. Thank you. So, Lieberstein, you have rebuttal time. I would like to spend just a few moments. Let me ask you the first question. Your opponent said that when the board made a new rejection, you had ample opportunity to address it but did not do so. Is that correct? I did. I did address it. I asked for, in fact, the opportunity to go back to the examiner, back to file a motion for that effect. It was all denied. They said it was too late because you – The examiner said it was too late? No, no. I never got to the examiner. This was already at the board. They said it was too late. That's a record. That doesn't match what Mr. Lamarck said. There's something else that doesn't match, too, that I want to address right now. This business about the 112, this application at all times, from the very beginning to the very end, included figure 12 exactly as it is shown in the patent. There has been no different figure. I don't know where this is coming from. The board was addressing a different issue. I don't know why it got confused. This figure 12 is the same figure 12 that has always been in the application, and the specification clearly supports. It states, a variation of the embodiment is shown in figures 12, 13, in which offsets are located in the upper rim of the chafing stand. That's exactly what it says. The offsets, by definition, by definition, create the displacement. If you have an offset, you have a displacement. To say that there were offsets but they're not taught to displace, they were talking about orientation. There's nothing in the application which requires any specific orientation of the offset in either embodiment. The offset can be, as shown in figure 2, figure 5, no, figure 2 can be on the left-hand side or it can be on the right-hand side. It doesn't matter. One could argue that there's certainly a preference to which direction the offset is, but the direction of the offset is not in the claim. The direction of the offset has not been claimed. There is nothing in the application which teaches, requires the offset to have any given orientation. Now, with regard to... Mr. Lieberstein, you say in your brief that upon allowance of the application, the appellant unsuccessfully sought to modify figures 12 and 13. I did. I filed... During prosecution, an amendment was... an attempt was made to modify figure 12. It was denied. That was the end of it. It wasn't made of record. It was not made of record. An attempt was made, and when the... During the appeal, it was assumed by me that an argument was being made concerning operability, that unless I had that alternative variation, it wasn't operable, and I wanted to prove it was operable. I was told, and it's in the record, operability is not the issue. The issue was clearly somehow there was some thinking that the offset merely adapts the member to make it ready when you place the second member in to facilitate nesting, to facilitate the stacking. The offset creates a displacement. It creates a separation. It's the separation which accommodates the additional member to fit inside. It doesn't adapt anything. In fact, in the specification itself, it says, have each wire leg having an indent, in parentheses, here and after offset, located adjacent the upper end thereof, which laterally displaces each leg. The offset causes a displacement. If you have an offset, you have a displacement. Therefore, the claim states comprising of planar offsets located in said first rim, laterally displacing. If you got the offset, you got the laterally displacement. You've got it. I would like to address this figure seven. Claim one does not cover figure seven. Figure seven was the embodiment representing the handles of the wire stack. However, the application, the specification clearly states that you could also, in a regular wire stack, which was the original intent that was supposed to cover alternate embodiments, you could also have offsets if you want, if you need, you want it for purposes of transportation. The offsets have nothing to do with the structure of the wire chafing stand. And claim one defines offsets and all the other claims are dependent on it. So there is no claim which covers figure seven. All the claims are dependent on claim one. Furthermore, claim five is dependent on claim one. Claim one defines offsets and requires offsets. Therefore, claim seven, which says the planar offsets are located at the separation, the offset forms the separation. What claim five is addressing is where to place the weld. If you take a look at the figures, you'll see that the weld can be located above the offset. In fact, it's preferable the weld be located above the offset, not at the offset. Figure five. Their objection to five is that the lack of antecedent basis for separation. Word separation is not used in the application. The word displacement is used. Claim five was filed as an original claim. It's its own word. It forms a word as part of the specification, the word separation. Word separation is the same as displacement. It's at the displacement. That's what it was intended to mean. No objection was ever raised by an examiner regarding claim five, ever. Or the board. The board did, but the examiner didn't during the original prosecution. And no objection was made during the reissue. The objection was made by the board itself. OK. Well, I guess we've exhausted your time. Any questions? I just want to be sure that the board will give us information as to how the thing works on the reissue. I'm going to see to that. What happens in the reissue. I'm going to make sure that you have a response now. OK. Check what you write. OK. Thank you. To make sure that you both agree. This should be quite straightforward. And it would be helpful to us to know. Any questions for anybody? OK. Thank you all. The case is taken under submission. Sure.